UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARLE STEINBERG,   Case No. 09-11836

    Plaintiff,   HONORABLE SEAN F. COX
United States District Judge

v.

CHARLES YOUNG, JR. et al.,

    Defendants.
_____/

OPINION & ORDER

Plaintiff Earle Steinberg ("Steinberg") filed this breach of contract and fraudulent transfer action against Defendants Charles Young, Jr. ("Young") and numerous business entities owned in whole or in part by Young, in the Oakland County, Michigan, Circuit Court on April 7, 2009. Defendant JPMorgan Chase Bank, N.A. ("the Bank") was allowed to intervene in the state court proceedings on April 29, 2009, and on May 13, 2009 the Bank removed this action. [Doc. No. 1]. The matter is currently before the Court on Steinberg's "Emergency Motion for Immediate Hearing for Preliminary Injunction" [Doc. No. 11], and Steinberg's "Motion for Appointment of Receiver." The parties have fully briefed the issues, and a hearing was held June 24, 2009. For the reasons that follow, the Court **DENIES** both of Steinberg's motions [Doc. Nos. 11 & 12].

BACKGROUND

Defendant Young is the owner or majority shareholder of several corporate entities ("the SDE Entities") that provide purchasing services to large companies in an effort to make purchasing more efficient.

1

The SDE Entities relevant to these motions are three separate companies: a parent company and two subsidiaries. The parent company is SDE Business Partnering, LLC ("SDE BP"). SDE BP is alleged to be the sole shareholder of two subsidiary entities: 1) SDE-MRO Express, Inc. n/k/a SDE Business Services, Inc. ("SDE MRO INC"); and 2) SDE-MRO Express, LLC ("SDE MRO LLC").

The Bank's Perfected Security Interest in the Assets of the SDE Entities

The Bank gave the SDE Entities a revolving line of credit, which, as of December 20, 2007, totaled $4,300,000 in outstanding debt on one note, and an additional $854,199.99 on a separate note. These debts were secured pursuant to two separate security agreements.

The first of these agreements granted the Bank a lien on all of SDE BP's "present and future inventory, chattel paper, accounts, monies, equipment and general intangibles, as well as all present and future accessions, attachments, accessories, tools, parts, supplies, replacements, additions, products, and produce of the assets. . . ." [SDE BP Security Agreement, Bank's Ex. 4, Doc. No. 15]. This security agreement was signed between the parties on November 29, 2005, and a UCC financing statement renewal was filed on October 24, 2007. [*See* Bank's Ex. 5, Doc. No. 15].

All of the obligations of the SDE Entities owed to the Bank are also secured under the terms of a commercial security agreement dated April 3, 2008, executed and delivered by SDE MRO LLC. According to the terms of that document, SDE MRO LLC granted the Bank a lien on all SDE MRO LLC's present and future inventory, chattel paper, accounts, monies, equipment and general intangibles, as well as all present and future accessions, attachments, accessories, tools, parts, supplies, replacements, additions, products, and produce of the assets.

2

SDE MRO LLC Security Agreement, Bank's Ex. 6, Doc. No. 15]. The Bank perfected its security interest in the SDE MRO LLC collateral by filing a UCC financing statement on April 29, 2008. [*See* Bank's Ex. 7, Doc. No. 15].

Bank does not have a security interest in the assets of SDE MRO INC, but at the hearing held June 24, 2009, both parties stipulated that SDE MRO INC does not currently, nor did it ever, have any assets in which to take a security interest.

<u>Young, the SDE Entities, and Steinberg</u>

On or about September 21, 2006, Steinberg entered into an employment contract with SDE MRO INC and SDE BP, with Young signing on behalf of the SDE Entities. Steinberg began working for SDE MRO INC in 2007 pursuant to a written employment agreement, receiving an initial retention bonus of $700,000 and an annual base salary of $750,000.

Steinberg never received $500,000 of his $700,000 retention bonus. Young is also alleged to have twice acted unilaterally in reducing Steinberg's base salary: from $750,000 to $502,000 on September 28, 2007; and from $502,000 to $250,000 on January 7, 2008. When Steinberg objected to these reductions in his compensation, Young demanded that Steinberg accept a new employment agreement or resign. Young ultimately terminated Steinberg's employment on February 4, 2008.

On February 8, 2008, Steinberg filed an arbitration claim against Young, SDE BP and SDE MRO INC with the American Arbitration Association ("AAA") for breach of his employment agreement. On January 21, 2009, the AAA panel found Young's defense to be frivolous, and granted a monetary award in favor of Steinberg in the amount of $1,049,587.45, plus interest. Steinberg filed a Motion to Confirm Arbitration Award in the Oakland County,

Michigan, Circuit Court on February 11, 2009, which was confirmed and entered as a judgment on February 18, 2009 in the amount of $1,052,777.53.

While Steinberg was pursuing the arbitration action against Young and the SDE Entities, Steinberg alleges that Young transferred funds, real property, and business opportunities between and among the SDE Entities in an effort to hinder Steinberg's collection efforts and to conceal or dissipate assets. During subsequent creditor's examinations, Steinberg admitted that money had been shifted between companies whenever one entity needed funds, which Young himself characterized as "robbing Peter to pay Paul." [Doc. No. 11, Ex. 5, p.81].

Young also allegedly purchased several homes in the Flint, Michigan area ("the Real Estate") with assets from the SDE Entities, and quitclaimed them between limited liability companies in an effort to further conceal assets.

Finally, Young is accused of transferring interests in several of the SDE Entities to third parties for consideration of less than market value, further evidence that Young may be attempting to hide assets from creditors such as Steinberg. Young is also alleged to have transferred several lucrative contracts between the SDE Entities for negligible consideration.

Relevant Proceedings Before This Court

On April 20, 2009, a consent judgment was entered into between Young and the SDE Entities, and the Bank, before this Court on a related case. [*See* Case No. 09-cv-10554, Doc. No. 13]. That order granted Bank a judgment against SDE BP under the first note in the principal balance of $2,456,783.41, interest of $37,576.49 through and including April 8, 2009, with interest continuing to accrue at the per diem rate of $344.59, costs of $250 and attorney fees of $36,232. Bank also was granted a judgment against SDE BP under the second note in the

principal balance of $637,107.59, interest of $1,879 through and including April 8, 2009, with interest continuing to accrue at the per diem rate of $96.98, costs of $300 and attorney fees in the amount of $36,232.

The assets of the SDE Entities, in which the Bank has a perfected security interest, are not likely to satisfy these judgments. [*See* Bank's Br., Doc. No. 15, p.9 ("[These] assets will not likely satisfy Bank's security interest as SDE [BP]'s only assets are its receivables.")]. As such, the Bank is likely undersecured in its loans to the SDE Entities.

After receiving his $1,052,777.53 judgment against Young and SDE MRO INC in Michigan state court, Steinberg filed the instant action in the Oakland County, Michigan, Circuit Court on April 7, 2009. In this action, Steinberg alleges that Young has abused the corporate form of the SDE Entities, and that Young has been fraudulently transferring assets out of the entities in an effort to defeat Steinberg's collection efforts.

On April 17, 2009, a temporary restraining order and order to show cause was entered by the Oakland County Circuit Court in favor of Steinberg on an *ex parte* basis, freezing the assets of the SDE Entities in order to prevent their dissipation.

The Bank intervened in this action by stipulation on May 13, 2009, and removed the action to federal court.

Steinberg filed his "Motion for Preliminary Injunction" [Doc. No. 11] on May 18, 2009, and his "Motion for Appointment of Receiver" [Doc. No. 12] on May 19, 2009. The Court held a status conference between the parties on May 22, 2009, wherein the parties agreed to extend the terms of the Oakland County Circuit Court's temporary restraining order through 5:00 p.m. on June 24, 2009, and the Court set Steinberg's two motions for a hearing on June 24, 2009.

5

STANDARD OF REVIEW

In evaluating a motion for preliminary injunction, federal courts consider the following four factors: 1) the likelihood of the movant's success on the merits; 2) whether the movant will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *See In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985).

In evaluating a motion for appointment of a receiver, federal courts consider a number of factors, including, but not limited to: 1) the existence of a valid claim by the moving party; 2) the probability that fraudulent conduct has occurred or will occur to frustrate the claim; 3) imminent danger that property will be lost, concealed or diminished in value; 4) inadequacy of legal remedies; 5) lack of less drastic equitable remedies; and 6) the likelihood that appointment of a receiver will do more harm than good. *See Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F.Supp. 428, 432 (E.D. Mich. 1995).

ANALYSIS

Even assuming, *arguendo*, that Young is abusing the corporate form of the SDE Entities in an effort to defeat Steinberg's creditor claim, Steinberg's motions [Doc. Nos. 11 & 12] must still be **DENIED**. The Bank is a secured creditor of the SDE Entities, with first priority over all the assets Steinberg alleges have been fraudulently transferred. Furthermore, at the June 24, 2009 hearing, evidence was presented to the Court that other secured creditors may also be in line to collect from Young and the SDE Entities before Steinberg. Evidence has also been presented to the Court that the value of the SDE Entities' assets leaves the Bank undersecured, and Steinberg has not presented any objective evidence to the contrary.

I.  Steinberg Cannot Satisfy the *In Re Delorean* Factors For Evaluating a Motion for Preliminary Injunction.

Steinberg argues that the Court should issue a preliminary injunction in the instant case, in effect halting what Steinberg alleges are fraudulent transfers by Young from the SDE Entities designed to frustrate Steinberg's collection efforts.  For purposes of this motion, the Court will presume, *arguendo*, that Steinberg can satisfy *In re Delorean*'s first prong requiring a "likelihood of success on the merits."  Even so, Steinberg is unable to satisfy the remaining three prongs of the *In re Delorean* analysis, and as such the Court **DENIES** his motion for preliminary injunction.  [Doc. No. 11].

A. Steinberg Will Not Suffer "Irreparable Injury" Without an Injunction.

Steinberg will not suffer "irreparable injury" under *In re Delorean*'s second prong should the Court not grant him an injunction in the instant case.  All of the assets of the SDE Entities which Steinberg seeks to levy upon in this action are already subject to the Bank's perfected security interest.[1]  Further, all evidence in this case suggests that the Bank is likely undersecured in the assets of the SDE Entities, i.e., that the liquidated value of the SDE Entities is unlikely to satisfy the Bank's security interest.  As such, even if Young is abusing the corporate form of the SDE Entities by passing money between them through fraudulent transfers, all such transfers are between entities the Bank enjoys a security interest over.  There is, in short, nothing for Steinberg to levy upon in this action.

As explained *supra*, the Bank perfected its security interest in SDE MRO INC's parent

---

[1] Again, while the Bank admittedly does not have a perfected security interest in the assets of SDE MRO INC, both parties stipulated at the June 24, 2009 hearing that SDE MRO INC does not currently, nor did it ever, have any assets upon which a creditor could levy.

7

company, SDE Business Partnering, LLC ("SDE BP") in 2005, and perfected its security interest in SDE-MRO Express, LLC ("SDE MRO LLC") in 2008. In contrast, Steinberg did not even become an unsecured judgment creditor until February of 2009.

Under Michigan's enactment of the Uniform Fraudulent Transfers Act ("UFTA"), codified at M.C.L. § 566.31 *et seq*., Steinberg cannot recover assets transfered by the SDE Entities. By definition under the UFTA, the "assets" Steinberg seeks to recover cannot include "property to the extent that it is encumbered by a valid lien." M.C.L. § 566.31(b). A valid security interest, such as the Bank's security interests in the assets of the SDE Entities, is such a "lien" for purposes of the UFTA.[2]

The Bank has first priority over all assets of the SDE Entities, and it appears that liquidation of all SDE Entity assets is unlikely to satisfy the Bank's security interest. Essentially, this means that all assets of the SDE Entities, including proceeds from those assets (such as the Real Estate), will be consumed first in satisfying the Bank's security interest before claims of unsecured creditors like Steinberg will be paid. As Steinberg likely stands to collect nothing from the SDE Entities' assets, the fraudulent transfer of assets between the SDE Entities does not injure Steinberg. The inability of an unsecured creditor to satisfy his or her judgment does not result in irreparable harm warranting a preliminary injunction. *See, e.g., Elliott Brothers Steel Co. v. Michigan Metals, Inc.*, 2008 WL 2697287, *2 (E.D. Mich. July 2, 2008) (Hood, J.). Steinberg therefore cannot satisfy prong two of *In re Delorean*.

### B. The Bank Will Suffer Harm if an Injunction is Granted.

---

[2] Pursuant to M.C.L. § 566.31(h), "lien" is defined as "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien, or a statutory lien."

As the secured creditor with first priority over the assets of the SDE Entities, the Bank likely stands to collect everything from the disposition of the SDE Entities' assets. Furthermore, any surplus assets not consumed in satisfaction of the Bank's security interest, if any do remain, will almost surely be consumed in satisfaction of other secured debts which also have priority over Steinberg's unsecured claim. Were this Court to grant a preliminary injunction in favor of Steinberg, an unsecured creditor, the Bank and any other secured creditors would be injured by the Court's order. Steinberg therefore cannot satisfy prong three of *In re Delorean*.

      C. <u>Issuing an Injunction Would be Contrary to the Public Interest</u>.

"[T]he basic purpose of Article Nine of the Uniform Commercial Code is to provide a simple and unified structure within which the immense variety of present-day secured financing transactions can go forward with less cost and with greater certainty." *Maxl Sales Co. v. Critiques, Inc.*, 796 F.2d 1293, 1296 (10th Cir. 1986). Commercial lenders are more willing to loan money to borrowers when the lender's rights in the collateral are protected and upheld by the law pursuant to the Code's terms.

Article Nine allows a lender whose debtor is in default to take possession of the collateral, M.C.L. § 440.9609(1)(a), and "sell, lease, license, or otherwise dispose of any or all of the collateral. . .," M.C.L. § 440.9610(1), in an effort to recoup its loss. This added security allows lenders to make loans to a greater number of applicants, whose credit scores may otherwise not qualify for loans, and allows banks to make loans at lower interest rates to all borrowers.

Granting Steinberg a preliminary injunction in this case, where all of the assets of the SDE Entities are subject to multiple security interests with higher priority, would, in effect,

prevent the secured creditors from availing themselves of the benefits of Article Nine; benefits those creditors likely took into account when advancing monies to the SDE Entities in the first place. M.C.L. § 440.9610(1) allows secured creditors such as the Bank to seize and sell the assets of the SDE Entities upon default. Not allowing the Bank to do so in this case, because of a preliminary injunction freezing the assets of the SDE Entities, would only make lenders more apt to refuse such loans in the future. This clearly is contrary to the public interest, and for that reason Steinberg cannot satisfy the fourth and final prong of *In re Delorean*.

For these reasons, the Court **DENIES** Steinberg's "Motion for Preliminary Injunction" [Doc. No. 11].

　　II.  <u>There is No Reason For the Court to Appoint a Receiver in This Case</u>.

Steinberg also brings a "Motion for Appointment of Receiver" [Doc. No. 12]. In that motion, Steinberg argues that "there are other creditors of SDE Business Partnering, LLC, and/or the other defendants, with outstanding amounts owed to them and which would also benefit from the appointment of a receiver." [Doc. No. 12, p.5]. "If a receiver is appointed, the assets of [the SDE Entities] may be gathered and distributed in a fair and economical manner." *Id*. at 6.

The Court has the power to appoint a receiver in cases where such action is warranted. The Federal Rules of Civil Procedure provide, in pertinent part:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in the aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held. . . .

FED. R. CIV. P. 69. Michigan state law allows for the appointment of a receiver upon the application of a judgment creditor:

> After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:

>  \*\*\*\*
>  (4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire.

M.C.L. 600.6104(4).  However, "the appointment of a receiver is an extraordinary equitable remedy that is justified only in extreme situations."  *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F.Supp. 428, 432 (E.D. Mich. 1995) (Gadola, J.).

*Meyer Jewelry* laid out several factors for courts to weigh in considering a motion for appointment of a receiver:

> Factors typically influencing the district court's exercise of discretion include the existence of a valid claim by the moving party; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be lost, concealed, or diminished in value; inadequacy of legal remedies; lack of less drastic equitable remedy; and the likelihood that appointment of a receiver will do more harm than good.

*Meyer Jewelry*, 906 F.Supp. at 432.

In this case, even assuming *arguendo* that Young and the SDE Entities have engaged in fraudulent conduct, the only creditor which has likely been damaged by that fraudulent conduct is the Bank.  Absent a showing that the assets of the SDE Entities are likely to return a surplus of monies above and beyond the Bank's secured claim, to say nothing of the other secured claims ahead in line of Steinberg, neither Steinberg nor any other unsecured creditor has been damaged by Young's actions in the instant case.

At the June 24, 2009 hearing, the Bank argued that it was perfectly capable of collecting and selling the assets of the SDE Entity, and therefore opposed Steinberg's request for a receiver.  The Court assumes that Bank is perfectly capable of performing the functions a receiver would perform.  Futhermore, a receiver, who would be entitled to collect expenses for

11

his or her efforts, would only further diminish the assets available to the Bank, to the other secured creditors of the SDE Entities, and, if somehow monies remain afterward, to Steinberg himself.

For these reasons, the Court **DENIES** Steinberg's "Motion for Appointment of Receiver" [Doc. No. 12].

## CONCLUSION

For the reasons explained above, the Court **DENIES** Steinberg's "Motion for Preliminary Injunction" [Doc. No. 11], and **DENIES** Steinberg's "Motion for Appointment of Receiver" [Doc. No. 12].

**IT IS SO ORDERED**.

                                        S/Sean F. Cox
                                        Sean F. Cox
                                        United States District Judge

Dated: June 30, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2009, by electronic and/or ordinary mail.

                                        S/Jennifer Hernandez
                                        Case Manager