UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EARLE STEINBERG,                 Case No. 09-11836

       Plaintiff,                  HONORABLE SEAN F. COX
                                    United States District Judge
v.

CHARLES YOUNG, et al.,

       Defendants.
_____/

ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT [Doc. Nos. 93, 95]
AND DISMISSING THIS ACTION WITHOUT PREJUDICE

      Plaintiff Earle Steinberg ("Steinberg") filed this fraudulent transfer action against Defendant Charles Young, Jr. ("Young") and numerous business entities owned by Young in whole or in part, in the Oakland County, Michigan, Circuit Court on April 7, 2009. Defendant JPMorgan Chase Bank, N.A. ("the Bank") intervened in the state court proceedings on April 29, 2009, and on May 13, 2009 the Bank removed this action. [Doc. No. 1]. The matter is currently before the Court on two motions: 1) the Bank's renewed Motion for Partial Summary Judgment [Doc. No. 93]; and 2) Mr. Young's concurrent Motion for Partial Summary Judgment [Doc. No. 95]. The parties have fully briefed the issues, and a hearing was held on July 29, 2010. For the reasons that follow, the Court **GRANTS** both the Defendants' and the Bank's motions [Doc. Nos. 93, 95], and **DISMISSES** this action **WITHOUT PREJUDICE**.

BACKGROUND

      Young is the owner or majority shareholder in numerous corporate entities ("the SDE Entities") that provide purchasing services to large companies in an effort to make purchasing

1

more efficient.

The SDE Entities are really three separate corporate entities - a parent company, and two subsidiaries. The parent company is SDE Business Partnering, LLC ("SDE BP"). SDE BP is the sole shareholder of two subsidiary entities: 1) SDE-MRO Express, Inc. n/k/a SDE Business Services, Inc. ("SDC MRO INC"); and 2) SDE-MRO Express, LLC ("SDE MRO LLC").

Bank's Perfected Security Interest in the Assets of the SDE Entities

Bank gave the SDE Entities a revolving line of credit, which, as of December 20, 2007, totaled $4,300,000 in outstanding debt on one note, and an additional $854,199.99 on a separate note. These debts were secured under the terms of two separate security agreements.

The first agreement granted Bank a lien on all of SDE Business Partnering, LLC's "present and future inventory, chattel paper, accounts, monies, equipment and general intangibles, as well as all present and future accessions, attachments, accessories, tools, parts, supplies, replacements, additions, products, and produce of the assets. . . ." [SDE BP Security Agreement, Bank's Ex. C, Doc. No. 93]. This security agreement was signed between the parties on November 29, 2005, and a UCC financing statement renewal was filed in the Delaware Department of State on October 24, 2007. [*See* Bank's Ex. E, Doc. No. 93].

All of the obligations of SDE owed to Bank are also secured under the terms of a commercial security agreement dated April 3, 2008, executed and delivered by SDE MRO LLC to the Bank. According to the terms of that document, SDE MRO LLC granted to Bank a security interest on all SDE MRO LLC's present and future inventory, chattel paper, accounts, monies, equipment and general intangibles, as well as all present and future accessions, attachments, accessories, tools, parts, supplies, replacements, additions, products, and produce of

the assets. [SDE MRO LLC Security Agreement, Bank's Ex. D, Doc. No. 93]. The Bank perfected its security interest in the SDE MRO LLC collateral by filing a UCC financing statement with the Delaware Department of State on April 29, 2008. [*See* Bank's Ex. D, Doc. No. 93].

The Bank does not have a perfected security interest in the assets of SDE MRO INC, but at prior hearings before the Court the parties have stipulated that SDE MRO INC does not currently, nor did it ever, have any assets upon which a secured lender could take a security interest. [*See* June 39, 2009 Opinion & Order, Doc. No. 35, p.3].

Young, the SDE Entities, and Steinberg

Young hired Steinberg as president of one of the SDE Entities, SDE-MRO Express, Inc., n/k/a SDE Business Services, Inc. ("SDE MRO INC"). Steinberg began working for SDE MRO INC in 2007 pursuant to a written employment agreement, receiving an initial retention bonus of $700,000 and an annual base salary of $750,000.

Steinberg never received $500,000 of his $700,000 retention bonus. Young also twice acted unilaterally to reduce Steinberg's base salary: from $750,000 to $502,000 on September 28, 2007; and from $502,000 to $250,000 on January 7, 2008. When Steinberg objected to these reductions in his compensation, Young demanded that Steinberg accept a new employment agreement or resign. Young ultimately terminated Steinberg's employment on February 4, 2008.

That same day, February 8, 2008, Steinberg filed an arbitration claim, against Young and the SDE Entities, with the American Artibration Association ("AAA") for breach of his employment agreement. On January 21, 2009, the AAA panel found Young's defense to be

3

frivolous, and granted a monetary award in favor of Steinberg in the amount of $1,049,587.45, plus interest. Steinberg filed a Motion to Confirm Arbitration Award in the Oakland County, Michigan, Circuit Court on February 11, 2009, which was confirmed and entered as a judgment on February 18, 2009 in the amount of $1,052,777.53.[1]

During the period Steinberg was pursuing the arbitration action against Young and the SDE Entities, Steinberg alleges that Young was transferring funds, real property, and business opportunities between and among the SDE Entities in an effort to hinder Steinberg's collection efforts and to conceal or dissipate assets. During creditor's exam hearings, Young repeatedly admitted that money was shifted between companies whenever one entity needed funds, which he characterized as "robbing Peter to pay Paul." [*See* Doc. No. 11, Ex. 5, p.81].

Young also allegedly purchased several real estate parcels in the Flint, Michigan area ("the Real Estate") with assets from the SDE Entities, and quitclaimed them between limited liability companies in an effort to further conceal assets.

Relevant Proceedings Before This Court

On April 20, 2009, a consent judgment was entered into between the Bank and Young and the SDE Entities before this Court on a related case. [*See* Case No. 09-cv-10554, Doc. No. 13]. That order granted Bank a judgment against SDE BP under the first note in the principal balance of $2,456,783.41, interest of $37,576.49 through and including April 8, 2009, with interest continuing to accrue at the per diem rate of $344.59, costs of $250 and attorney fees of $36,232. Bank also was granted a judgment against SDE BP under the second note in the

---

[1] This date is after the security interests of the Bank were perfected in the assets of the SDE Entities, meaning that the Bank enjoys priority in the SDE Entities' assets over Steinberg's claim.

principal balance of $637,107.59, interest of $1,879 through and including April 8, 2009, with interest continuing to accrue at the per diem rate of $96.98, costs of $300 and attorney fees in the amount of $36,232. As stated in the affidavit of Mr. Kenneth Shillingburg, a Vice President of the Bank with personal knowledge of these transactions, at the time these motions were filed there remained due and owing by SDE BP in excess of $3,400,000 on these obligations. [*See* Shillingburg Aff., Bank's Ex. 1, Doc. No. 105]. However, at the July 29, 2010 hearing, counsel for the Bank informed the Court that the current outstanding amount is now only $2,800,000.

After receiving his $1,052,777.53 judgment against Young and SDE MRO INC in Michigan state court, Steinberg filed the instant action in the Oakland County, Michigan, Circuit Court on April 7, 2009. In this action, Steinberg alleged that Young has abused the corporate form of the SDE Entities, and has been fraudulently transferring assets out of the entities in an effort to defeat Steinberg's creditor claims.

On April 17, 2009, a temporary restraining order and order to show cause was entered by the Oakland County Circuit Court in favor of Steinberg on an *ex parte* basis, freezing the assets of the SDE Entities in order to prevent their dissipation. Shortly thereafter, on May 13, 2009, the Bank intervened in this matter, and removed the action to federal court.

Steinberg filed a motion for preliminary injunction [Doc. No. 11] on May 18, 2009, and a motion for appointment of receiver [Doc. No. 12] on May 19, 2009 - both of which the Court denied. [*See* June 30, 2009 Opinion & Order, Doc. No. 35]. At the scheduling conference held on August 19, 2009, the Court set a discovery cutoff date in this action of February 15, 2010 [*See* Doc. No. 59].

On September 11, 2009, the Bank filed its first motion for partial summary judgment

5

[Doc. No. 61]. In that motion, the Bank argued that, as the Bank was undersecured in security interest in the SDE Entities, Steinberg's fraudulent conveyance action should be dismissed. *Id*. at 10. The Court denied that motion without prejudice, holding that any consideration of the value of the SDE Entities' assets was premature given that discovery had not closed at that time. [*See* November 18, 2009 Opinion & Order, Doc. No. 72, p.2]. The Bank's instant motion [Doc. No. 93], filed March 15, 2010, essentially renews that prior motion now that discovery has closed in the matter. Young and the SDE Entities have filed a concurrent motion before the court, with arguments essentially mirroring those made by the Bank. [*See* Young's Br., Doc. No. 95].

Steinberg's Evidence Regarding the Value of the SDE Entity Assets

In opposing both the Bank's and Young's concurrent motions, Steinberg concedes that the Bank is a secured lender of the SDE Entities, enjoying priority over Steinberg's unsecured creditor claims. Steinberg further concedes that the value of the Bank's security interest meets or exceeds $2,800,000 - though Steinberg also argues that the Bank has not accounted for certain sums which it has already received. [Pl.'s Counter-Statement of Facts, Doc. No. 101, ¶7]. However, Steinberg argues that he "has put forth evidence, including values of various properties, receivables, and contracts, which suggest[] that there are enough assets to cover Chase's secured interest." *Id*. at ¶32. Specifically, Steinberg argues that the following assets of the SDE Entities are available for the Bank to levy upon - which he contends exceed the value of the Bank's security interest in the SDE Entities.

Real Property Assets of the SDE Entities

Steinberg argues that the SDE Entities purchased numerous parcels of real estate - some

developed, some vacant - in the Flint, Michigan area, and that these parcels could be sold in partial satisfaction of the Bank's security interest. [*See* Pl.'s Br., Doc. No. 101, pp.7-10]. In support of this argument, Steinberg attaches Genesee County and City of Flint, Michigan records displaying the State Equalized Value ("SEV") - a number used for taxation purposes - of each of these properties. In total, Steinberg argues, these properties are worth an aggregate of approximately $1,823,700 - and further argues that "the value of these properties *may* even be higher than the SEV." [Pl.'s Br., Doc. No. 101, pp.8-9 (emphasis added)].

Though not entirely clear from Steinberg's documentation filed in opposition to this motion, at least one of these properties - located at 410 Lippencott Boulevard - has a fairly substantial mortgage on the property. Of the approximately $1.8 million in real estate Steinberg claims the SDE Entities own, the 410 Lippencott property alone - which Steinberg concedes was purchased by the SDE Entities for $750,000 in 2008 - has a $600,000 mortgage attached to the property. [*See* Pl.'s Ex. 6, Doc. No. 101]. No evidence has been presented to the Court that this mortgage was ever satisfied, nor is it clear from Steinberg's filings whether any other parcels owned by the SDE Entities are encumbered with prior mortgages.

Finally, Steinberg argues that some of the parcels owned by the SDE Entities could produce income streams that should be used to the Bank's benefit. [*See* Pl.'s Br., Doc. No. 101, p.9]. The documents that Steinberg attaches in support of this contention, however, explicitly state that their "leased value estimate[s]" and their "Final Market Value[s]" are "not appraisals to be used for valuation" purposes. [*See* Exs. 9-11, Doc. No. 101].

### Receivable and Customer Account Assets of the SDE Entities

Steinberg further argues that the following amounts are still owed to SDE BP or to SDE

7

MRO LLC:

        1. A $2.2 million receivable owed by Chrysler LLC
        2. A $1,789,881.90 receivable owed by EDS
        3. A $600,000 receivable owed by Loretto Bay
        4. A $700,000 receivable owed by TDS Syncreon

[*See* Pl.'s Br., Doc. No. 101, p.11].[2] These receivables, Steinberg argues, are potential assets upon which the Bank could seek repayment.

As Bank argues in its reply brief, however:

> . . . Plaintiff admits. . . that every single account debtor garnished by Bank has responded to the garnishment to say that not one cent is due to the Defendant Entities or that no funds are available to satisfy any such garnishment due to on-going bankruptcy proceedings. Plaintiff insists, with no admissible evidence, that the full amount of each receivable is available to satisfy Bank's claims.

[Bank's Reply, Doc. No. 103, p.4].

With respect to the claimed $2.2 million owed to the SDE Entities by Chrysler LLC, that asset is subject to the automatic stay entered into in Chrysler's Chapter 11 bankruptcy proceedings in the Southern District of New York - and as such no money is claimed to be owed at this time to the SDE Entities.[3] [*See* Garnishee Disclosures, Bank's Ex. H, pp.1-2]. Steinberg has not disputed this evidence.

With respect to the claimed approximately $1.78 million owed to the SDE Entities by EDS, EDS has responded that approximately $1.62 million of that money is not owed because

---

[2] An additional receivable was originally claimed by Steinberg as well: a $2.2 million receivable owed by an entity known as Corporate Express. Since the filing of these motions, however, that obligation has been satisfied - $1.6 million of the $2.2 million was satisfied by setoff rights between Corporate Express and the SDE Entities, with the remaining $600,000 accounting from the reduction in the Bank's security interest from $3.4 million to $2.8 million.

[3] Further, the value of this asset - like most unsecured debts owed by a bankrupt entity, will likely be severely discounted in the course of Chrysler's bankruptcy proceedings. At the July 29, 2010 hearing, Steinberg conceded that this claim was likely valueless.

8

the SDE Entities failed to submit the required documentation for reimbursement of those expenditures. *Id.* at p.11. Further, while EDS admits that $162,458.41 is due to the SDE Entities, that amount is subject to setoffs in the amount of $471,385.57 - thus, there is no money claimed due and owing to the SDE Entities. *Id.* Steinberg has not disputed this evidence.

With respect to the claimed $600,000 owed to the SDE Entities by an entity known as Loretto Bay, the Bank argues that it is unaware of any amounts owed by that entity - apparently a real estate development in Mexico - to the SDE Entities. [Bank's Supp. Br., Doc. No. 105, p.2]. While Steinberg generally argues that the Bank, as "the first secured party. . . should be pursuing all avenues of relief," [Pl.'s Supp. Br., Doc. No. 106, p.3], Steinberg has come forward with no proof corroborating his allegation that such a debt is owed to the SDE Entities.

Finally, with respect to the claimed $700,000 owed to the SDE Entities by TDS Syncreon, that entity's garnishee disclosure disclaims any monies being owed to the SDE Entities. [*See* Bank's Supp. Br., Doc. No. 105, Ex. 2]. Steinberg's supplemental brief [Doc. No. 106] does not dispute this evidence.

At the July 29, 2010 hearing, counsel for Steinberg conceded that he is not aware of any other assets of the SDE Entities relevant to these motions.

## STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the

9

pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

In this fraudulent transfer cause of action, Steinberg alleges that Young has abused the corporate form of the SDE Entities in an effort to defeat collection of Steinberg's judgment against him. All parties agree that the Bank, as a secured creditor, has first priority over the assets of the SDE Entities. All parties further agree that, under Michigan law, transfers of property in an effort to hinder creditor collections are only fraudulent to the extent that such property is not covered by a valid lien. The essence of the current dispute, therefore, hinges on the value of the assets owned by the SDE Entities.

The Bank argues that it is Steinberg's burden to evidence a genuine issue of material fact that the value of the SDE Entities is sufficient to exceed the Bank's security interest - a burden that Steinberg's counsel conceded at the July 29, 2010 hearing. As Steinberg has failed to meet that burden, both the Bank and Steinberg argue that summary judgment in their favor is proper. The Court agrees.

Michigan's Uniform Fraudulent Transfer Act, M.C.L. § 566.31 *et seq*, "was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditor's rights." *In re Michigan Machine Tool Control Corp.*, 381 B.R. 657, 667 (E.D. Mich. Bankr. 2008) (internal citations

omitted). Section 566.34(1) of the Act provides as follows, in pertinent part:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditors claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:
>
> > (a) *With actual intent to hinder, delay, or defraud any creditor of the debtor*.

M.C.L. § 566.34(1)(a) (emphasis added). A "transfer" is defined as "disposing of or parting with an asset or an interest in an asset. . . ." M.C.L. § 566.31(l). While the Act defines an "asset" to include the property of the debtor, the term "does not include any of the following. . . *Property to the extent that it is encumbered by a valid lien*. . . ." M.C.L. § 566.31(b) (emphasis added). All parties to these motions agree that the Bank's perfected security interest in the assets of the SDE Entities satisfies this "encumbered by a valid lien" requirement.[4]

As discussed *supra*, all parties concede that the amount outstanding on the Bank's loan to the SDE Entities - secured by a perfected security interest in the assets of the SDE Entities - exceeds $2.8 million. Therefore, if the value of the SDE Entities' assets is less than $2.8 million - making the Bank an undersecured party - there are no assets of the SDE Entities not "encumbered by a valid lien" for purposes of M.C.L. § 566.31(b); and by definition, therefore, Young and the SDE Entities could not have fraudulently transferred anything. In other words, if all of the SDE Entity assets are subject to the Bank's security interest, then all Young and the SDE Entities would be alleged to have done is move assets *between entities which all parties concede are subject to the Bank's perfected security interest.*

---

[4] While this Court is not aware of any Michigan state law cases interpreting "lien" to include a perfected security interest for purposes of the Uniform Fraudulent Transfer Act, other jurisdictions readily agree that a security interest satisfies this requirement. *See, e.g., Mullins v. TestAmerica Inc.*, 564 F.3d 386 (5th Cir. 2009). Again, the parties to this motion do not dispute this conclusion.

If, on the other hand, the value of the SDE Entity assets *exceeds* the $2.8 million owed to the Bank, then Young and the SDE Entities could - theoretically - be shown to have fraudulently transferred assets with the intent to defraud unsecured creditors like Steinberg. The value of the assets owned by the SDE Entities, therefore, is of central importance to this litigation. As the party alleging a fraudulent transfer cause of action, Steinberg bears the burden of proof as to every element of his claim - including proof that assets were available for transfer that were not encumbered by a valid lien. *See, e.g., In re Grove-Merritt*, 406 B.R. 778, 789 (S.D. Ohio 2009); *Lexington Oil & Gas Ltd.*, 2010 WL 431401 (Bankr. E.D. Okla. Jan. 27, 2010).

The evidence Steinberg offers in opposition to this motion falls short of this requirement.[5] Again, Steinberg argues that two separate classifications of assets owned by the SDE Entities should be taken into account by the Court: 1) real estate parcels owned by the SDE Entities; and 2) receivables and other customer accounts allegedly owed to the SDE Entities.

With respect to the second of these categories - receivables and other customer accounts - Steinberg alleges that four such receivables owed to the SDE Entities by Chrysler LLC, EDS, Loretto Bay, and TDS Syncreon total in excess of $5.2 million - almost double the Bank's security interest in the SDE Entity assets. It is undisputed by Steinberg, however, that all of these "assets" are either uncollectible, subject to setoffs by the debtors, or otherwise have not been shown to have any assets owed to the SDE Entities. Steinberg himself concedes that the

---

[5] As discussed *supra*, the Court previously denied a similar motion [Doc. No. 61] by the Bank brought before the close of discovery in this action [*See* November 11, 2009 Opinion & Order, Doc. No. 72]. Discovery in this matter closed in February of 2010, and at no time prior to the discovery cutoff did Steinberg request additional time for discovery - nor at this time does Steinberg make such a request. While the Court is sympathetic to the difficult task undertaken by the plaintiff in this matter - attempting to unwind the complicated maze of transactions entered into by Young and the SDE Entities - the time for discovery in this matter has passed.

Chrysler receivable is likely uncollectible [*see* Pl.s' Br., Doc. No. 101, p.11]. Steinberg further offers no evidence to rebut EDS's claim that the receivable claimed by the SDE Entities - drastically discounted due to the SDE Entities' own inactions - is subject to a complete setoff. Nor does Steinberg offer evidence to dispute TDS Syncreon's assertion that the $700,000 receivable claimed is, in fact, not owed to the SDE Entities. Finally, Steinberg offers no definitive proof - or even a genuine issue of material fact - that any indebtedness by Loretto Bay exists at all to the SDE Entities. In light of these facts and circumstances, the Court simply cannot consider these "assets" to be included in a valuation of the SDE Entities.

Thus, the only remaining assets to be evaluated by the Court in this suit are the real estate parcels owned by the SDE Entities. The proper valuation method by the Court is disputed by the parties. The Bank, Young, and the SDE Entities, for example, argue that the Court cannot consider the values of the properties listed by Steinberg, as those documents are alleged to be inadmissible hearsay. [*See* Bank's Reply, Doc. No. 103, pp.2-3]. However, even assuming, *arguendo*, that the Court *can* properly consider this evidence, the value of these real estate parcels falls well short of the required $2.8 million required for Steinberg to proceed.

In support of his valuations of the real estate parcels, Steinberg attaches computer printouts of the State-Equalized Values for each parcel of real estate. Even assuming that these parcels *could* be sold at the SEV price level - a inferential leap in logic, to be sure - Steinberg only offers SEV information for twenty-nine of the forty-nine listed real estate parcels. For the other twenty parcels, Steinberg offers absolutely no information as to their value. While, inductively, these twenty parcels must have *some* value, this Court simply cannot value these parcels with absolutely *no* information as to their value.

13

Evaluating the remaining twenty-nine real estate parcels is also not without its troubles. Examining the SEV information for these parcels, it is apparent that the total aggregate value of these parcels amounts to only $1,788,340.00. [*See* Pl.'s Ex. 7, Doc. No. 101]. Further, it is apparent from Steinberg's own briefing that at least one of these real estate parcels - the 410 Lippencott Blvd. property - had a $600,000 mortgage on it as recently as August of 2008 [*See* Pl.'s Br., Doc. No. 101, p.8]. Steinberg has made no showing to this Court that the mortgage on this parcel has been satisfied - nor has Steinberg, for that matter, provided any evidence that the remaining twenty-eight parcels of real estate do not have similar mortgages.

Even drawing inferences as far in Steinberg's favor as possible in this matter related to the value of the twenty-nine real estate parcels, the proven value of the SDE Entity assets still fall well short of the $2.8 million threshold. Assuming that the SDE Entities could sell the 410 Lippencott Blvd. property for the full price Young paid for it in February of 2008 - alleged to be $750,000, much higher than the property's $323,600 SEV price, and assuming the $600,000 mortgage has already been satisfied, the total value of the SDE Entity assets as proven by Steinberg only amounts to $2,214,740.00.[6] Even assuming that the SDE Entities could recoup this amount of money on the sale of the properties for the Bank's benefit, the Bank would remain undersecured to the tune of roughly $600,000 - and likely much more so, considering the inferences made by the Court *supra*.

Taking the facts as presented by Steinberg in the light most favorable to him, no genuine issue of material fact remains that the Bank is undersecured on its security interest in the assets

---

[6] The Court arrives at this number by taking the aggregate SEV price for all twenty-nine parcels - $1,788,340, subtracting the $323,600 SEV price for 410 Lippencott Blvd., and replacing it with the $750,000 purchase price for that property.

of the SDE Entities. As such, no assets have been shown by Steinberg to be outside the encumbrance of a valid lien for purposes of M.C.L. § 566.31(b) - and as a matter of law, therefore, neither Young nor any of the SDE Entities could have fraudulently transferred any of these assets. Summary judgment in favor of both the Bank [Doc. No. 93] and in favor of Young and the SDE Entities [Doc. No. 95], is therefore proper.

Of course, the possibility always remains that the Bank's security interest in the SDE Entity assets might one day be satisfied in full - the real estate parcels, for example, could sell for far more than the parties to this litigation anticipate, or one of the receivable accounts described above could prove fruitful. Given this possibility, the Court is loath to dismiss this action with prejudice - forever barring Steinberg from asserting a fraudulent conveyance action against either Young or the SDE Entities under the doctrine of *res judicata*. Rather the Court will dismiss this action without prejudice. Should the Bank's security interest one day be satisfied, Steinberg may again be free to pursue the merits of these claims against Young and the SDE Entities.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** both the Defendants' and the intervening Bank's motions for summary judgment [Doc. Nos. 93, 95], and **DISMISSES** this action **WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

                                                S/Sean F. Cox
                                                Sean F. Cox
                                                United States District Judge

Dated: August 11, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2010, by electronic and/or ordinary mail.

                                           S/Jennifer Hernandez
                                           Case Manager